IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERIC KOENIG and | § | |
| PAULA KOENIG | § | |
| | § | |
| Plaintiffs, | § | Case No. 3:04-CV-01590-K |
| | § | |
| vs. | § | |
| | § | |
| THE PURDUE PHARMA COMPANY, | § | |
| PURDUE PHARMA, L.P., ET AL., | § | |
| | § | |
| Defendants. | § | |
| | § | |

# MEMORANDUM OPINION and ORDER

Before the Court is Defendants Purdue Pharma L.P. (Individually and as successor to The Purdue Pharma Company), Purdue Pharma Inc., and the Purdue Frederick Company's (collectively "Purdue") motion for summary judgment. Also before the Court is Abbott Laboratories and Abbott Laboratories, Inc.'s (collectively "Abbott") motion for summary judgment. The Court **GRANTS** summary judgment for Abbott and Purdue on Plaintiffs' claims for strict products liability (Count I); breach of the implied warranty of merchantability (Count III); negligence (Count IV); and fraud, misrepresentation and suppression (Count VI) because Plaintiffs have not raised a genuine issue of material fact as to causation, an essential element of Plaintiffs' claims. Because Plaintiffs' underlying personal injury claims fail for lack of causation, the Court also **GRANTS** summary judgment for Abbott and Purdue on Plaintiffs' derivative claims for civil conspiracy (Count VII) and loss of consortium (Count VIII). Abbott and

Purdue's motions for summary judgment are therefore **GRANTED**. Abbott's motion to Strike Plaintiffs' Exhibit 19 in support of Plaintiffs' opposition to summary judgment is **DENIED**. All pending motions in limine are **DENIED** as moot.

## I.  Background Facts

This case arises out of a joint promotional marketing campaign between Purdue and Abbott. The purpose of the marketing campaign was to promote the prescription medication OxyContin Tablets ("OxyContin"), a Schedule II controlled substance opioid medication. Plaintiffs allege that the promotional marketing campaign failed to adequately warn doctors about the addiction risks of OxyContin and affirmatively misrepresented and minimized those risks in order to increase OxyContin sales. Plaintiffs further allege that Koenig was prescribed OxyContin by his doctors, became addicted, and suffered adverse health affects from taking the drug.

## II.  Summary Judgment Legal Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment

should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57(1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

### III.   Koenig's Personal Injury Claims Against Abbott

#### A.   Causation is an Essential Element

The Court **GRANTS** summary judgment for Abbott on Plaintiffs' personal injury claims because Plaintiffs have produced no evidence showing a causal connection between Abbott's co-promotion of OxyContin and Koenig's injuries.  Causation is an essential element for each of Koenig's personal injury claims.  *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995 ) (strict liability); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667 (Tex. 1999) (breach of warranty); *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993) (negligence); *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (fraud and fraudulent concealment); *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 396 (Tex. App.–Amarillo 2000, no pet.) (misrepresentation).  Because Plaintiffs have produced no evidence showing causation, an essential element of Plaintiffs' case, Koenig's personal injury claims fail as a matter of law.  *See Comm. Workers v. Ector County*

*Hosp. Dist.*, 392 F.3d 733, 748 (5th Cir. 2004) (stating that summary judgment is appropriate where the evidence demonstrates that no genuine issues of material fact exist as to an essential element of the non-moving party's case).

    **B.**    **Lack of Evidence on Causation**

Plaintiffs have failed to raise a genuine issue of material fact as to causation because they have presented no evidence demonstrating a causal connection between Koenig's prescriptions and Abbott's co-promotion of OxyContin. Dr. Craig Danshaw ("Dr. Danshaw") first prescribed OxyContin to Koenig in September 1999, for one month, and then resumed prescribing OxyContin to Koenig from May 2000 until September 2002. It is undisputed that Abbott did not contact Dr. Danshaw to promote OxyContin until August 2001, nearly two years *after* Dr. Danshaw first prescribed OxyContin to Koenig. Because Abbott did not contact Dr. Danshaw until after he began prescribing OxyContin to Koenig, it cannot be said that Abbott's co-promotion of OxyContin caused Dr. Danshaw to prescribe OxyContin to Koenig, or that Abbott caused any of Plaintiffs' personal injuries.

Dr. Alex Tseng ("Dr. Tseng") also prescribed OxyContin to Koenig on just one occasion in June 2002, during the time that Dr. Danshaw was Koenig's primary prescribing physician. Koenig testified in deposition that he took only one of the pills prescribed by Dr. Tseng and then resumed receiving his prescriptions from Dr. Danshaw. Although Abbott conducted promotional visits with Dr. Tseng beginning in February of

2002, there is no evidence that Dr. Tseng prescribed OxyContin for any reason other than to maintain Dr. Danshaw's treatment regimen, which began in May of 2000. In short, Plaintiffs have produced no evidence showing that Abbott caused Dr. Danshaw or Dr. Tseng to prescribe OxyContin for Koenig. Because Plaintiffs have not demonstrated a genuine fact issue on the essential element of causation, the Court **GRANTS** summary judgment for Abbott on Koenig's personal injury claims.

## IV. Plaintiffs' Personal Injury Claims Against Purdue – Learned Intermediary

### A. Causation is an Essential Element

Plaintiffs have also brought claims against Purdue for strict products liability; breach of implied warranty of merchantability; negligence; and fraud, misrepresentation, and suppression. Each of these claims rest on the allegation that Purdue failed to adequately warn Koenig's prescribing physician, Dr. Danshaw, about the addictive properties and dangerous side effects associated with OxyContin. *See In re Norplant Contraceptive Products Liability Litigation*, 955 F. Supp. 700, 710 (E.D. Tex. 1997), aff'd, 165 F.3d 374 (5th Cir. 1995) (finding that similar claims all rested on plaintiff's failure to warn allegations). Under Texas law, Plaintiffs must establish the following as to each cause of action: (1) the warnings provided to Dr. Danshaw by Purdue were defective and (2) the alleged inadequacies in Purdue's warnings were a producing or proximate cause of Koenig's particular injuries. *See Id.* (citing *Stewart v. Janssen Pharmaceutica, Inc.*, 780 S.W.2d 910, 911 (Tex. App.–El Paso 1989, writ denied)). Assuming, without deciding,

that Purdue's warning was defective, Plaintiffs' claims fail as a matter of law because they have not raised a genuine fact issue on producing cause. The Court therefore **GRANTS** Purdue's motion for summary judgment on Plaintiffs' failure to warn claims.

In any failure to warn case, the plaintiff must show that the manufacturer's warning was defective and that it was the producing cause of the plaintiff's injuries. *See Wyeth-Ayerst Laboratories Co. v. Medrano*, 28 S.W.3d 87,94 (Tex. App.– Texarkana 2000, no pet.) (citations omitted ). In cases involving a learned intermediary, like a prescribing physician, the plaintiff must prove causation by showing that a proper warning would have changed the intermediary's decision to prescribe the product. *Id*. (citing *Stewart* 780 S.W.2d at 912; *In re Norplant*, 955 F. Supp. at 710-11). It is undisputed that Dr. Danshaw acted as a learned intermediary in this case because he prescribed OxyContin to Koenig. In order to survive summary judgment, Plaintiffs must therefore produce some evidence creating a genuine fact issue as to (1) whether Purdue's warning was defective, and (2) whether a proper warning would have changed Dr. Danshaw's decision to prescribe OxyContin to Koenig. *See id.*

### B.  Plaintiffs Have Presented no Competent Summary Judgment Evidence on Causation

For purposes of this summary judgment motion, the court assumes without deciding that Purdue's warning about the addictive properties and dangerous side effects of OxyContin were inadequate. Summary judgment for Purdue is still appropriate,

however, because Plaintiffs have failed to create a genuine fact issue regarding causation. Under Texas law, an inadequate warning is not a producing cause of the plaintiff's injuries, as a matter of law, if the prescribing physician was aware of the risks associated with the drug, yet decided to prescribe it anyway. *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 468 (5th Cir. 1999); *Stewart*, 780 S.W.2d at 912. In this case, summary judgment is appropriate for Purdue because Dr. Danshaw testified he was aware of the addictive risks associated with OxyContin. Dr. Danshaw stated in his deposition that all patients were at risk for developing opioid tolerance. When asked whether opiod tolerance was a typical phenomenon after an extended period of use, Dr. Danshaw responded, "That's correct. The patient's tolerance is more of a physiological response. Some develop the tolerance at a faster pace than others." Dr. Danshaw also testified that it would not be surprising for a patient to experience withdrawal when tapering down the dose of an opioid medication. Because Dr. Danshaw was aware of the possible addiction risks associated with the opiod OxyContin, yet chose to prescribe it anyway, Purdue's inadequate warning was not a producing cause of Koenig's injury as a matter of law. *See id*.

Even if Dr. Danshaw was not fully aware of the risks associated with OxyContin, as Plaintiffs allege, summary judgment is still appropriate for Purdue because Dr. Danshaw testified that none of the information shown to him since he last prescribed OxyContin would have changed his mind about prescribing it for Koenig. An inadequate

warning is not a producing cause of a plaintiffs injuries if a different warning would not have changed the prescribing physician's decision to prescribe the drugs. *In re Norplant*, 955 F. Supp. at 710-11; *Wyeth-Ayerst*, 285 S.W.3d at 95. In this case, Dr. Danshaw was asked, in deposition, "Is there anything that you've seen since you last prescribed OxyContin to Mr. Koenig that would lead you to believe that your decision to prescribe OxyContin was not a good one?" Dr. Danshaw responded, "Not at all. There's nothing I would perceive that [OxyContin] was an inappropriate agent." Because plaintiffs have failed to show that an adequate warning would have changed Dr. Danshaw's decision to prescribe OxyContin, and because Dr. Danshaw testified that he would not have changed his decision, the Court finds that Plaintiffs have failed to raise a genuine fact issue regarding the producing cause of Koenig's injuries. *See id*. The Court therefore **GRANTS** summary judgment for Purdue on Plaintiffs' personal injury claims.

   **C.**  **The Read and Heed Presumption Does Not Apply in This Case**

Even though Plaintiffs have produced no evidence that a proper warning would have changed Dr. Danshaw's decision to prescribe OxyContin, Plaintiffs argue that Texas law creates a presumption establishing a causal link between Purdue's inadequate warning and Koenig's injuries. Under Texas law, when a manufacturer fails to give adequate warnings or instructions, a rebuttable presumption arises that the user would have read and heeded such warnings or instructions (the "read and heed presumption"). *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex. 1987). If applied in this case,

the read and heed presumption would support Plaintiff's burden of establishing the producing cause of Koenig's injuries. *See id*. at 834. Plaintiffs argue that the read and heed presumption applies to Dr. Danshaw, and that Purdue has failed to overcome the presumption that Dr. Danshaw would have changed his decision to prescribe OxyContin if an adequate warning had been provided. The Court finds Plaintiffs' argument unpersuasive because (1) Texas courts have not applied the read and heed presumption to cases involving a learned intermediary, (2) this Court, when applying Texas law, has not applied the read and heed presumption to cases involving a learned intermediary, and (3) applying the read and heed presumption in this case would not serve the purposes for which it was intended.

As previously stated, it is undisputed that Dr. Danshaw acted as a learned intermediary because he prescribed OxyContin to Koenig. Although Plaintiffs argue that the read and heed presumption applies in this case, Texas courts have not applied the read and heed presumption to cases involving a learned intermediary. *See e.g. Wyeth-Ayerst*, 28 S.W.3d at 95; *Stewart*, 780 S.W.2d at 911; *Cooper v. Bowser*, 610 S.W.2d 825, 832 (Tex. Civ. App.–Tyler 1980, no writ). Fifth Circuit cases applying Texas law have also not applied the read and heed presumption to claims involving a learned intermediary. *See e.g. Porterfield*, 183 F.3d at 468; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir. 1992). In these cases, the plaintiff, not the defendant, bore the burden of production as to causation. *See Skotak* at 913 (holding that the defendant was

not required to produce evidence negating causation). Because Texas court have not applied the read and heed presumption to failure to warn cases involving learned intermediaries, it would be it would be improper for this Court to do so.

Similarly, this Court, when applying Texas law, has also not applied the read and heed presumption to cases involving a learned intermediary. *See e.g. Dyer v. Danek Medical, Inc.*, 115 F. Supp. 2d 732, 741 (N.D. Tex. 2000) (Lindsay, J.). The Plaintiffs in Dyer alleged that the manufacturers of a spinal fixation device failed to warn physicians about the potential dangers associated with their product. *Id*. at 741. This Court held that Texas law required the *plaintiff* to demonstrate that the supplier's failure to warn the learned intermediary was a producing cause of the plaintiff's injury. *Id*. at 741 (citing *Boswell v. Burroughs Wellcome Co.*, 1997 WL 198746, at *2 (Tex. App.–Dallas Apr. 24, 1997, writ denied). This Court rejected the read and heed presumption for learned intermediaries, found that the *plaintiff* failed to satisfy the causation requirement, and granted summary judgment for the defendants. *See id.* at 742. Because this Court did not apply the read and heed presumption in *Dyer*, the Court declines to do so now.

The Court also finds that applying the read and heed presumption in this case would not serve the purposes for which it was intended. As stated by the Texas Supreme Court, the purpose of the read and head presumption is (1) to excuse plaintiffs from having to make self-serving assertions that they would have followed adequate instructions, and (2) to assist plaintiffs in cases where the person to whom the warnings

are directed has died, and evidence of what he would have done is unavailable for that reason. *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993). Neither of these factors are relevant in cases involving a learned intermediary because it is the physician, not the plaintiff, who testifies about his decision to prescribe the product. Many courts have held that to "read and heed," in the context of a learned intermediary, means only that the physician would have incorporated the additional risk into his decisional calculus. *See Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 814 (5th Cir. 2002) (applying Mississippi law); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 2002) (applying South Carolina Law); *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1021 (10th Cir. 2001) (applying Oklahoma law). In these cases, the plaintiffs bore the burden of production on causation. *See id*. Though not stated specifically in the Texas cases cited by Purdue, this is the likely analysis applied by Texas courts as well. *See Wyeth-Ayerst*, 28 S.W.3d at 95 ("In a failure to warn case that is governed by the learned intermediary doctrine...the *plaintiff* must still prove causation.") (emphasis added).

Plaintiffs urge this Court to follow *Anderson v. Sandoz Pharmaceuticals Corp.*, 77 F. Supp. 2d 804 (S.D. Tex. 1999), where the court did apply the read and head presumption in a failure to warn case involving a learned intermediary. Because Texas state courts have not extended the presumption to learned intermediaries, however, the Court chooses instead to follow the decisions of the Fifth Circuit, the Northern District of Texas, and the Eastern District of Texas, which require the plaintiff to produce

evidence showing causation when applying Texas law. See *Porterfield*, 183 F.3d at 468; *Skotak*, 953 F.2d at 91; *Dyer*, 115 F. Supp. 2d at 741; *In re Norplant*, 955 F. Supp. at 710-11. The Court therefore declines to apply the read and heed presumption, and holds that Plaintiffs have the burden of establishing causation in this case. Because Plaintiffs have failed to raise a genuine fact issue as to causation, as discussed in Section IV, B of this Opinion, the Court **GRANTS** summary judgment for Purdue on Plaintiffs' personal injury claims.

V.   **Plaintiffs' Derivative Claims**

Count VII of Plaintiffs' complaint alleges that Abbott and Purdue engaged in a civil conspiracy regarding OxyContin. Count VIII states a claim for loss of consortium. Under Texas law, these causes of action are derivative claims, requiring proof that Abbott caused injury to Mr. Koenig. *See Upjohn Co. V. Freeman*, 885 S.W.2d 538, 549 (Tex. App.–Dallas 1994, writ denied) (loss of consortium); *Tilton v. Marshall*, 925 S.W.2d 672, 680-81 (Tex. 1996) (civil conspiracy). Because the Court has granted summary judgment for Abbott and Purdue on Koenig's underlying claims, Plaintiffs' derivative claims for loss of consortium and civil conspiracy must also fail as a matter of law. *See Upjohn*, 885 S.W.2d at 549 (loss of consortium); *Tilton*, 925 S.W.2d at 681 (civil conspiracy). The Court therefore **GRANTS** summary judgment for Abbott and Purdue on Plaintiffs' claims for civil conspiracy and loss of consortium.

VI.   **Conclusion**

Plaintiffs have not raised a genuine issue of material fact as to causation, an essential element of Koenig's personal injury claims, because (1) there is no causal connection between Koenig's prescriptions and Abbott's co-promotion of OxyContin, and (2) a different warning about OxyContin's addictive properties would not have changed Dr. Danshaw's decision to prescribe the drug for Koenig.  The Court therefore **GRANTS** summary judgment for Abbott and Purdue on Plaintiffs' claims for strict products liability (Count I); breach of the implied warranty of merchantability (Count III); negligence (Count IV); and fraud, misrepresentation and suppression (Count VI) Because Plaintiffs' personal injury claims fail as a matter of law, the Court also **GRANTS** summary judgment for Abbott and Purdue on Plaintiffs' derivative claims for civil conspiracy (Count VII) and loss of consortium (Count VIII).  Abbott and Purdue's motions for summary judgment are therefore **GRANTED**.  Abbott's motion to Strike Plaintiffs' Exhibit 19 in support of Plaintiffs' opposition to summary judgment is **DENIED**.  All pending motions in limine are **DENIE**D as moot.

**SO ORDERED.**

Signed May   23rd   , 2006.

           s/Ed Kinkeade
           ED KINKEADE
           UNITED STATES DISTRICT JUDGE